STATE, A. K. WAGNER ET AL., PROSECUTORS, v. DAVID JACKSON, COLLECTOR OF TAXES, &c.

An act of the legislature of the 25th March, 1864, authorized the township of Delaware to raise money by taxation, to relieve its inhabitants from the burthen of a draft. It authorized the inhabitants, at a special town meeting to be held for that purpose, to raise such sum as they should decide to be necessary for that object. The money voted was, within ten days, to be assessed upon the polls and personal

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

property of the tax payers, according to the valuation in the next preceding assessment, and was to be paid out for the purpose of relieving the inhabitants from the burthen of a draft, in such manner as should be directed by that town meeting.·

At a meeting of the township, duly convened it was resolved to raise thirty-one thousand dollars, and that it should be applied, when raised, to the payment of the commutation money for the exemption from draft of such persons as should be drafted and accepted for the township. *Held*—

1. That any legislation by the state or its municipal corporations contrary to an act of congress, or which obstructs the federal government in performing its functions, is invalid. It need not be in direct opposition to an act of congress, or in terms annul it, but if such legislation tend, or may tend, to defeat its operation, the legislation is void.

2. The act of congress of 23d March, 1863, for calling out the national forces, provides that any person drafted may furnish a substitute, or that he may pay to the government three hundred dollars for the procuration of such substitute. The declared object of the act was to raise an army to suppress the rebellion. Its policy was to tempt men, by money, to enter the service when drafted.

As the township, by the course it pursued, took away entirely from the drafted man the pecuniary inducement to enter the service, wisely and deliberately provided by congress, which was not done by the legislation that gave the money to the drafted man, if he served, the tax assessed for that purpose was illegal.

Error to Supreme Court.

The writ of error in this case was returned to the June Term, 1865, and was brought to review the judgment of the Supreme Court, in a matter of taxation, rendered at the Term of February, 1865.

For case, opinion, and judgment of the court, see 2 *Vroom* 189.

The prosecutors, by their attorney, assigned errors for the reversal of the said judgment, as follows :

1. That the Supreme Court held the said assessment of taxes against the relators removed into said court by the said relators for review was valid, lawful, and constitutional ;

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

whereas, by the law of the land, said assessment of taxes was invalid, unlawful, and unconstitutional.

2. That the said Supreme Court held that the said assessment of taxes against the said relators was lawful; whereas, said assessment of taxes against said relators was unlawful.

3. That the said Supreme Court held that the act of the legislature of the State of New Jersey, entitled "an act to authorize the township of Delaware, in the county of Hunterdon, to raise money by taxation to relieve the inhabitants of said township from the burthen of a draft," approved March 25th, 1864, under which, or under color of which said assessment of taxes was made, was constitutional and valid, and that the proceedings of a town meeting, held in the said township under said act, were regular and lawful; whereas the said act is unconstitutional and invalid, and the proceedings of said town meeting were irregular and unlawful.

4. That the said Supreme Court held that the proceedings of a certain town meeting, held in the said township of Delaware, on the seventeenth day of May, in the year of our Lord one thousand eight hundred and sixty-four, at which the said assessment of taxes was ordered to be made, were valid, legal, and regular, and not designed or intended to obstruct, impede, or in any way control, and did not obstruct, impede, or in any way control the execution and enforcement of the act of congress, entitled "an act for enrolling and calling out the national forces and for other purposes," and the supplements thereto; whereas, the proceedings of said town meeting were invalid, illegal, and irregular, and the said proceedings were designed and intended to obstruct, impede, and control the execution and enforcement of the said act of congress and supplements thereto, and did obstruct, impede, and control the execution and enforcement of said act of congress.

5. That the said Supreme Court held that the said assessment of taxes was made, pursuant to the order and direction of said town meeting, for a lawful and proper purpose;

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

whereas, by the law of the land, said assessment was made for an improper and unlawful purpose, said assessment being made to raise money by taxation for the private, personal, and exclusive benefit of a few persons of said township, and to release a few persons of said township from the performance of a personal and individual duty.

6. That the said Supreme Court held that the assessor of the said township of Delaware had made a legal and sufficient assessment of taxes under said act; whereas, the said assessor had made no assessment whatever.

7. That the said Supreme Court held that the use made of the said act of the legislature of the State of New Jersey, by the people and officers of the said township of Delaware, was warranted by the act itself, and comformable to the letter and spirit thereof; whereas, the use made of it was unwarranted, and the proceedings under it were in violation of both its spirit and letter.

8. That the said Supreme Court held that the assessment made against the said relators was for a lawful tax; whereas, said assessment was not for a lawful tax, the money raised by such assessment not being intended for any public use but for private benefit.

9. That the said Supreme Court held that the money raised by said assessment could, under the resolutions adopted at the town meeting of the seventeenth day of May, in the year of our Lord one thousand eight hundred and sixty-four, be paid to such drafted men as should enter the military service of the United States; whereas, by the express language of said resolutions, such money could only be used in the payment of the commutation money for the exemption from the draft of such persons as were drafted, and any person drafted and entering the military service of the United States could not and would not have received one cent of the money assessed against and upon the tax payers of said township.

A. V. Van Fleet,
*Att'y and of counsel with the plaintiffs in error.*

The common joinder in error was filed by the defendant.

The cause was argued at the June Term, 1865.

For plaintiffs in error, *A. V. Van Fleet* and *F. T. Frelinghuysen*, Attorney-General.

For defendant in error, *B. Van Syckel* and *P. D. Vroom.*

The court held the case under advisement to the next term.

At November Term, 1865, a majority of the judges who were present at the hearing of the case expressed an opinion in favor of reversing the judgment of the Supreme Court.

At the same term of the court, a rule was granted, on application of the counsel of the defendant in error, that the plaintiff in error show cause, on the first day of the next term, why a re-argument should not be had. The grounds of the application were—

That, owing to unavoidable accident, only a bare majority of the court were present when the case was argued; and that it was eminently proper that a case in which the constitutionality of an act of the legislature was called in question, should be heard and decided by all the members of the court competent to sit.

March Term, 1866, the rule to show cause was argued by counsel, and was made absolute.

June Term, 1867, the case was re-argued by the same counsel, and the court took time to advise.

November Term, 1867, the Chancellor delivered the opinion of the court, reversing the judgment of the Supreme Court.

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

ZABRISKIE, Chancellor. The tax confirmed by the Supreme Court in this case, was assessed by virtue of a special act of the legislature, passed March 25th, 1864. It was an act to authorize the township of Delaware to raise money by taxation to relieve its inhabitants from the burthen of a draft. It authorized the inhabitants at a special town meeting to be held for that purpose, to raise such sum as they -hould decide to be necessary for that object. The money voted was within ten days to be assessed upon the polls and personal property of the tax-payers, according to the valuation in the next preceding assessment, and was to be paid out for the purpose of relieving the inhabitants from the burthen of a draft, in such manner as should be directed by that town meeting.

At a town meeting duly convened, it was resolved to raise thirty-one thousand dollars, and that it should be applied, when raised, to the payment of the commutation money for the exemption from draft of such persons as should be drafted and accepted for the township.

The assessor made the assessment by copying not only the valuation of property, but the names of the polls, and the lists of taxable property from the duplicate of the last assessment, without applying to the tax payers, or using any means to ascertain the polls or actual taxable property at such assessment.

It is contended that this tax is illegal, and should be set aside as against the prosecutors, for two reasons.

The first is, that this money was appropriated by the resolutions directing it to be raised to relieve the township only by paying the commutation of such drafted men as elected to stay at home and procure no substitute; it could not be used to relieve such of the inhabitants as should be drafted and elect to serve, or send substitutes in their places. That it thus offered a premium at public expense to those only who should refuse to aid the government, by furnishing men for the war. That in this way the effect of the appro-

priation was to obstruct the operation and execution of the act of congress for enrolling and calling out the national forces, and to embarrass the government in raising men to carry on the terrible war in which it was engaged.

The act of congress of March 25th, 1863, for calling out the national forces, in the thirteenth section provides that any person drafted may furnish a substitute, or that he may pay to the government three hundred dollars for the procuration of such substitute.

It is contended that the action of this township tended to defeat and obstruct the operation of the act of congress: and its object, the raising a military force, which the preamble declares was necessary to suppress the rebellion, and that this effect was produced by taking away from the inhabitants of the township all pecuniary inducement to enter the service.

It is not disputed that any legislation by the state or its municipal corporations, contrary to an act of congress, or which obstructs the federal government in performing its functions, is invalid. It need not be in direct opposition to an act of congress, or in terms annul it, but if such legislation tend or may tend to defeat its operation, the legislation is void.

On this principle, taxing federal bonds or a bank chartered by congress for government purposes, has been held to be illegal, although no federal legislation forbade it.

The question raised and debated in this case is, whether this appropriation of the money for commutation only, was calculated to defeat or obstruct the operation of this act of congress, in the declared object it had in view, raising an army to suppress the rebellion. If it caused no other impediment to the raising of men, than was caused by the provisions of the act itself, it is clear that this appropriation is not illegal, and will not vitiate the assessment.

It is contended, for the township, that it only did what the act of congress permitted the drafted men to do, pay

three hundred dollars to relieve him from service, and enable the government to procure a substitute.

This reasoning would be sound, were it not that the act of congress placed before the drafted man an inducement to enter the service which these proceedings took away. That inducement was the sum of three hundred dollars placed in the opposite scale against being excused from the service. Congress judged, and perhaps rightly, that this inducement, combined with their patriotism, would induce as many men as were needed to enter the army. The state legislation which authorized money to be raised to furnish substitutes actually provided the men called for. That which directed it to be paid to the drafted man who should go or furnish a substitute at his election, or to be paid for his commutation, held the same inducement before him. In such case, if he entered the army, he received three hundred dollars, precisely the sum which he saved himself from paying by the act of congress, had not the state interfered. It no doubt, was not so stringent in compelling men to enter the service, as being forced to pay that sum, because some might not be able to raise it. From this iron compulsion, which in many cases would be hard and oppressive, the great mass of legislation as to bounties in this and other states, was intended to relieve the citizen, but in no case, in this state, besides this and perhaps one other township, was the provision made to pay the money only for such persons as should refuse to serve or provide a substitute.

By the action of this town meeting, the inducement held out by congress, and carefully retained in other townships, which was, that three hundred dollars would be saved or received by entering the service, was entirely taken away. The operation of this was naturally and necessarily to prevent those from serving the government who would have done so, had the inducement of the pay been held out to them. The whole policy of the act of congress to tempt men, by money, to enter the service when drafted, was defeated by this pecu-

liar appropriation. It is not necessary that we should believe that this was the object of the town meeting; if their proceedings had that effect, it vitiates the assessment of a tax raised for such purpose. And while it may be difficult to believe that these resolutions so well and carefully contrived to prevent any inhabitant of Delaware from answering the call of the president, were not intended by the draftsman for that purpose, it is easy to conceive that the great mass of citizens who voted for them, may have done so without such intent, or knowledge that such would be their effect.

It is no answer to this that these drafted men, if willing to serve, could, by going to other townships which paid bounties, or to the recruiting offices of the government, obtain the same, or a larger bounty by enlisting.

Many good citizens when called on to serve their country when chosen by lot as the quota of their own township, would not have shrunk from the performance of their duty by going, in company with their neighbors, if they could have had the same pay as others received, would not go from their homes to enlist as hired substitutes for other townships among strangers, perhaps of different habits and condition in life, and who might be mere mercenaries, attracted by the large bounties so lavishly offered in many quarters. The inducements offered by the act of congress, should have been placed before the drafted men, at the time when they were compelled to decide whether they would obey the call of their country or refuse, the time when all the other motives to which this was an aid, were acting on their minds. They should, too, have been allowed to receive this bounty without the bitter rebuke from their fellow townsmen, that if they went to that war they should not receive it from them. And for one who should offer to a juror or a witness, a sum equal to his fine, if he would absent himself from court, it would be no defence or excuse that an offer made by others to pay a much larger sum if he attended, would counteract his crime.

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

As this township took away entirely from the drafted man the pecuniary inducement to enter the service wisely and deliberately provided by congress, which was not done by the legislation that gave the money to the drafted man if he served, the tax assessed for that purpose is illegal, and must be set aside.

The second reason urged and relied on for reversal is, that the assessor did not make the assessment in the manner required by law.

As the conclusion arrived at upon the other point must decide the cause, no opinion is given by the court upon the question of the assessment. But for the reason before stated, the judgment of the Supreme Court must be reversed, and the assessment declared void as against the prosecutors.

BEDLE, J., read the following dissenting opinion :

No serious objection is or can be raised against the act of our legislature of March 25th, 1864, to enable the township to relieve its inhabitants, by taxation, from the burthen of a draft. The right to pass such a law has been recognized by this court, but the chief ground of objection is that the action of the township under it was in conflict with the enrollment act of congress. Although the township could not, under color of the act of the legislature or otherwise, adopt any mode of relief that would either impede or defeat the act of congress, yet any mode of relief thought best by the township, under the act of the legislature not inconsistent with the act of congress, could be adopted. The inhabitants of the township by a larger vote than required by the law, on the 25th March, 1864, resolved to raise thirty-one thousand dollars, by assessment and taxation. They further resolved that the same, so ordered to be raised, or such part thereof as should come into the hands of the collector, should be applied by him to the payment of the commutation money for the exemption from the draft, of such persons as should be drafted and accepted for the township,

at the then ensuing draft, the one then ordered. It is urged that this object, to raise and pay commutation money, contravened the act of congress. It may be conceded as insisted by the counsel of the prosecutors, that the purpose of the enrollment act was to raise men, but nevertheless it expressed no preference for a drafted man over a substitute. The act was satisfied with either. To compel drafted persons to go into actual service was a hard necessity which congress, in the act, was willing to avoid, and to that end it was enacted that any person drafted could furnish an acceptable substitute to take his place in the draft, or he could pay to such person as the secretary of war should authorize to receive it, such sum not exceeding three hundred dollars, as the secretary should determine for the procuration of such substitute, and thereupon such person so furnishing the substitute or paying the money, should be discharged from further liability under that draft. *Act March 3d*, 1863, § 13. The amendatory act of 1864 fully recognizes the provisions of the act of March 3d, 1863, that the money was to be paid for the procuration of a substitute, but limits the time of exemption from a further draft so as not to exceed one year. The object, then, of the enrollment act, was to obtain drafted men or substitutes, and the payment of the money was only a means to procure the substitute. The amount fixed by the secretary of war was not as a fine or penalty to be imposed upon the drafted men for not going into actual service, or furnishing a substitute himself, but a sum fixed that the government was satisfied to receive for the purpose of procuring a substitute, and which the drafted man could, at his option, pay under the act. This, to my mind, is the plain meaning of the terms of the law. If each three hundred dollars paid would not provide a substitute, and thereby less substitutes be raised from any one draft than otherwise, still that difficulty would not affect the legality of the action of the township, it could only question the wisdom of that provision of the law. But it is not improb-

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

able that some regard was had to that, among other contingencies of the draft, in ordering it to be made for fifty per cent. more than the necessary number required, and besides other drafts could be ordered to supply any deficiency. There is no difference, so far as the act of congress is concerned, between the township raising money to pay for substitutes *to be furnished by the drafted men or the township,* and raising money for substitutes, to be procured by the general government. The latter undertakes, in the law, to procure a substitute upon payment of a certain sum to be fixed by the secretary of war, and all drafted persons can be so relieved. The language of the enrollment act need only to be read and taken in its plain terms, to see that there is no discrimination between furnishing the substitute and paying the money. " Any drafted person may furnish an acceptable substitute, or he can pay such sum, &c , for the procuration of *such* substitute, and thereupon such person so *furnishing the substitute or paying the money,* shall be discharged from further liability under that draft." This is the language of the act of 1863, and the act of 1864 in no wise changes it, except as to the time of exemption, by the payment of the money. In short, the act of congress does not prefer a drafted man to a substitute. The person drafted my furnish an acceptable substitute himself, or pay the money for the procuration of such. If the township raises money under an act of the legislature, to furnish substitutes for drafted men, its legality could not, I apprehend, be successfully questioned. In this case, whether wisely or not on the part of the township, it makes no difference; the township instead of furnishing the substitutes or raising the money in words for substitutes, voted to raise money to pay three hundred dollars for the exemption of each drafted man, and thereby adopted a mode recognized by the act of congress, whereby the general government could obtain substitutes, and with which, whether wise or not on the part of congress, that act was satisfied. Exemption from personal service was the result accomplished whether the drafted man or the town-

State, Wagner et al., pros., v. Jackson, Collector of Delaware.

ship furnished the substitute, or the money for the procuration of a substitute was paid to the secretary of war.

This action of the township is no more liable to the imputation of inducing the person drafted to stay at home than if the substitutes were actually procured by the township. The effect of any law to raise money for volunteers or substitutes is to allow those drafted or liable to a draft to remain at home. The township could so act under the law of March 25th, 1864, as would, in its opinion, best relieve the inhabitants from their burthen, provided it did not contravene the act of congress, and in determining that we must take the act as it is. In my opinion the action of the township was not in conflict with the act of congress, and the judgment of the Supreme Court should be affirmed.

*For affirmance*—BEDLE, DALRYMPLE, WOODHULL, DEPUE, CLEMENT.    5.

*For reversal*—The CHANCELLOR, VREDENBURGH, OGDEN, WALES, VAIL, KENNEDY.    6.

Judgment reversed.